IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
CIVIL CASE NO. 5:18-cv-00166-MR

CURTIS SHANE HOLLARS,            )
                                 )
                  Plaintiff,     )
                                 )
vs.                              )   **MEMORANDUM OF**
                                 )   **DECISION AND ORDER**
ANDREW SAUL, Commissioner        )
of Social Security,              )
                                 )
                  Defendant.     )
_____  )

**THIS MATTER** is before the Court on the Plaintiff's Motion for Summary Judgment [Doc. 12] and the Commissioner's Motion for Summary Judgment [Doc. 15].

**I.     BACKGROUND**

On January 27, 2015, Curtis Shane Hollars (the "Plaintiff") filed for supplemental security income payments under Title XVI of the Social Security Act (the "Act") with a protective filing date of November 12, 2014. [Transcript ("T.") at 224]. The Plaintiff's application alleged an onset date of July 8, 2014. [Id.]. His claims were initially denied on May 12, 2015, and upon reconsideration on October 2, 2015. [Id. at 12]. On the Plaintiff's request, a hearing was held on July 21, 2017 before an Administrative Law

Judge ("ALJ"). [Id. at 42-88]. On October 18, 2017, the ALJ issued a written decision denying the Plaintiff benefits, finding that the Plaintiff was not disabled within the meaning of the Act since November 12, 2014. [Id. at 36]. On August 14, 2018, the Appeals Council denied the Plaintiff's request to review the ALJ's decision, thereby making the ALJ's decision the final decision of the Commissioner. [Id. at 1-5]. The Plaintiff has exhausted all available administrative remedies, and this case is now ripe for review pursuant to 42 U.S.C. § 405(g).

## II. STANDARD OF REVIEW

The Court's review of a final decision of the Commissioner is limited to (1) whether substantial evidence supports the Commissioner's decision, Richardson v. Perales, 402 U.S. 389, 401 (1971); and (2) whether the Commissioner applied the correct legal standards. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). "When examining [a Social Security Administration] disability determination, a reviewing court is required to uphold the determination when an ALJ has applied correct legal standards and the ALJ's factual findings are supported by substantial evidence." Bird v. Comm'r, 699 F.3d 337, 340 (4th Cir. 2012). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005)

(internal quotation marks omitted).  "It consists of more than a mere scintilla of evidence but may be less than a preponderance."  Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012) (internal quotation marks omitted).  A denial of benefits is not supported by substantial evidence if the ALJ "has [not] analyzed all evidence and . . . sufficiently explained the weight he has given to obviously probative exhibits."  Gordon v. Schweiker, 725 F.2d 231, 236 (4th Cir. 1984).

"In reviewing for substantial evidence, [the Court should] not undertake to reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the ALJ."  Johnson, 434 F.3d at 653 (internal quotation marks and alteration omitted).  Rather, "[w]here conflicting evidence allows reasonable minds to differ," the Court defers to the ALJ's decision.  Id. (internal quotation marks omitted).  To enable judicial review for substantial evidence, "[t]he record should include a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence."  Radford v. Colvin, 734 F.3d 288, 295 (4th Cir. 2013).  It is the duty of the ALJ to "build an accurate and logical bridge from the evidence to his conclusion."  Monroe v. Colvin, 826 F.3d 176, 189 (4th Cir. 2016) (citation omitted).  "Without this explanation, the reviewing court cannot properly evaluate whether the ALJ

3

applied the correct legal standard or whether substantial evidence supports his decisions, and the only recourse is to remand the matter for additional investigation and explanations." Mills v. Berryhill, No. 1:16-cv-25-MR, 2017 WL 957542, at *4 (W.D.N.C. Mar. 10, 2017) (Reidinger, J.) (citing Radford, 734 F.3d at 295).

## III. THE SEQUENTIAL EVALUATION PROCESS

A "disability" entitling a claimant to benefits under the Social Security Act, as relevant here, is "[the] inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security Administration Regulations set out a detailed five-step process for reviewing applications for disability. 20 C.F.R. §§ 404.1520, 416.920; Mascio v. Colvin, 780 F.3d 632, 634 (4th Cir. 2015). "If an applicant's claim fails at any step of the process, the ALJ need not advance to the subsequent steps." Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995) (citation omitted). The burden is on the claimant to make the requisite showing at the first four steps. Id.

At step one, the ALJ determines whether the claimant is engaged in substantial gainful activity. If so, the claimant's application is denied

regardless of the medical condition, age, education, or work experience of the claimant. Id. (citing 20 C.F.R. § 416.920). If not, the case progresses to step two, where the claimant must show a severe impairment. If the claimant does not show any physical or mental deficiencies, or a combination thereof, which significantly limit the claimant's ability to perform work activities, then no severe impairment is established and the claimant is not disabled. Id.

At step three, the ALJ must determine whether one or more of the claimant's impairments meets or equals one of the listed impairments ("Listings") found at 20 C.F.R. 404, Appendix 1 to Subpart P. If so, the claimant is automatically deemed disabled regardless of age, education or work experience. Id. If not, before proceeding to step four, the ALJ must assess the claimant's residual functional capacity ("RFC"). The RFC is an administrative assessment of "the most" a claimant can still do on a "regular and continuing basis" notwithstanding the claimant's medically determinable impairments and the extent to which those impairments affect the claimant's ability to perform work-related functions. Social Security Ruling ("SSR") 96-8p; 20 C.F.R. §§ 404.1546(c); 404.943(c); 416.945.

At step four, the claimant must show that his or her limitations prevent the claimant from performing his or her past work. 20 C.F.R. §§ 404.1520, 416.920; Mascio, 780 F.3d at 634. If the claimant can still perform his or her

5

past work, then the claimant is not disabled. Id. Otherwise, the case progresses to the fifth step where the burden shifts to the Commissioner. At step five, the Commissioner must establish that, given the claimant's age, education, work experience, and RFC, the claimant can perform alternative work which exists in substantial numbers in the national economy. Id.; Hines v. Barnhart, 453 F.3d 559, 567 (4th Cir. 2006). "The Commissioner typically offers this evidence through the testimony of a vocational expert responding to a hypothetical that incorporates the claimant's limitations." 20 C.F.R. §§ 404.1520, 416.920; Mascio, 780 F.3d at 635. If the Commissioner succeeds in shouldering his burden at step five, the claimant is not disabled and the application for benefits must be denied. Id. Otherwise, the claimant is entitled to benefits.

## IV. THE ALJ'S DECISION

At step one, the ALJ found that the Plaintiff had not engaged in substantial gainful activity from the application date, November 12, 2014. [T. at 14]. At step two, the ALJ found that the Plaintiff has the following severe impairments: degenerative changes of the right knee, cervical and lumbar degenerative disc disease, low intellectual functioning, and mood disorder with major depressive disorder. [Id. at 15]. At step three, the ALJ determined that the Plaintiff does not have an impairment or combination of impairments

6

that meets or medically equals the Listings. [Id. at 17]. The ALJ then determined that the Plaintiff, notwithstanding his impairments, has the RFC:

> [T]o perform light work as defined in 20 CFR 416.967(b) except no climbing ropes, ladders, or scaffolds; occasional climbing of ramps or stairs; occasional stooping, kneeling, crouching, and crawling; no squatting; frequent but not constant reaching overhead bilaterally; need to avoid concentrated exposure to vibration or temperature extremes; work would need to be simple, routine, repetitive tasks at a non-production pace in a stable work setting; occasional public contact; would need to be able to alternate between sitting and standing hourly while remaining on task.

[Id. at 20].

At step four, the ALJ found that the Plaintiff is unable to perform any past relevant work. [Id. at 34]. At step five, based upon the testimony of the VE, the ALJ concluded that, considering the Plaintiff's age, education, work experience, and RFC, the Plaintiff is capable of performing other jobs that exist in significant numbers in the national economy, including inspector, (Dictionary of Occupational Titles ("DOT") number 529.687-058), checker (DOT number 221.587-010), and label coder (DOT number 920.587-014). [Id. at 35]. The ALJ therefore concluded that the Plaintiff was not "disabled" as defined by the Social Security Act from November 12, 2014, the date the application was filed, through October 18, 2017, the date of the decision. [Id. at 36].

## V. DISCUSSION[1]

As one of his assignments of error, the Plaintiff argues that the ALJ's determination that the Plaintiff had "at least a high school education" was not supported by substantial evidence. [Doc. 13 at 10].

### A. Determining that the Plaintiff had a High School Education

The ALJ found that the Plaintiff has "at least a high school education." [T. at 35]. While Plaintiff concedes that he "did graduate from high school," he argues that the ALJ erred by failing to consider contradictory evidence showing that his educational abilities were below a high school level, including IQ testing, cognitive testing, medical records, and school records. [Doc. 13 at 10-12].

The vocational factors used to determine if the claimant can adjust to other work include the claimant's age, education, and work experience. 20 C.F.R. §§ 404.1560(c), 416.960(c). Education is defined as the claimant's "formal schooling or other training which contributes to [his/her] ability to meet vocational requirements." Id. §§ 404.1564(a), 416.964(a). In evaluating a claimant's educational level, an ALJ may determine that a claimant is illiterate, has a marginal education, has a limited education, or

---

[1] Rather than set forth the relevant facts in a separate section, the Court has incorporated the relevant facts into its legal analysis.

has a high school education and above. Id. §§ 404.1564(b), 416.964(b). A claimant with a high school education has "abilities in reasoning, arithmetic, and language skills acquired through formal schooling at a 12th grade level or above" and "can do semi-skilled through skilled work." 20 C.F.R. § 404.1564(b)(4).

"The numerical grade level that [a claimant] completed in school may not represent [his or her] actual educational abilities." 20 C.F.R. § 416.964(b). As such, a "claimant's grade level is only used to determine a claimant's educational abilities 'if there is no other evidence to contradict it.'" Vanderpool v. Berryhill, No. 5:18-CV-44-RJ, 2019 WL 118414, at *9 (E.D.N.C. Jan. 7, 2019) (quoting Shoulars v. Astrue, 671 F. Supp. 2d 801, 807 (E.D.N.C. 2009)). Where there is conflicting evidence as to claimant's education level, the ALJ must explain his findings. See Shoulars, 671 F. Supp. 2d at 807.

In his decision, the ALJ discussed medical opinions in the record that found the Plaintiff to have below average intelligence. [T. at 31, 33]. The ALJ noted that the Plaintiff graduated with a grade point average that ranked him at 247 out of 259 students. [Id. at 22]. The ALJ also noted that the Plaintiff testified that he could not do math well, could not count change correctly, could not do math in his head, was a slow reader, and had issues

9

with spelling. [Id. at 17]. The ALJ also mentioned that the Plaintiff received "low scores on achievement, cognitive, and standardized testing." [Id. at 22]. The ALJ ultimately found that the Plaintiff had at least a high school education but did not provide any further explanation for his conclusion. [Id. at 35].

Evidence in the record contradicts the ALJ's finding that the Plaintiff's educational abilities were at the high school education and above level. [T. at 17, 22, 28, 31, 33]. Plaintiff's testimony [see e.g., Id. at 17] would tend to show that his educational "abilities in reasoning, arithmetic, and language skills acquired through formal schooling" did not rise to "a 12th grade level or above." 20 C.F.R. § 404.1564(b)(4). Because there was contradictory evidence regarding the Plaintiff's educational level in the record, the ALJ was obligated to explain his findings regarding the Plaintiff's educational abilities. See Shoulars, 671 F. Supp. 2d at 807. The ALJ failed to do so.

Moreover, the Plaintiff also submitted a comprehensive psychological evaluation for inclusion in the record.[2] [Doc. 13 at 11; Doc. 13-1]. For reasons unexplained in the record, that evaluation was not included in the

---

[2] In a prior opinion dated July 7, 2014, a different ALJ discussed the Plaintiff's IQ testing results when making findings regarding the Plaintiff's educational abilities. The Commissioner does not offer any explanation for why the ALJ in this case failed to consider the IQ testing results in his opinion or for why the IQ testing results were not included in the record. [Doc. 16 at 15-16].

record or considered by the ALJ. [Doc. 13-1 at 1]. As part of the evaluation, the Plaintiff underwent IQ testing, which showed that the Plaintiff fell in the "Extremely Low Range of Intelligence." [Id. at 6]. The evaluation also showed that the Plaintiff reads at a 4.3 grade-level and has mild mental retardation. [Id.]. Those results provide further evidence that the Plaintiff's educational abilities were not at the high school education and above level. The ALJ nonetheless failed to consider them or explain how they impacted his findings.

## VI. CONCLUSION

The ALJ erred by failing to explain his findings regarding the Plaintiff's educational level in light of the contradictory evidence contained in the record. See Vanderpool, 2019 WL 118414, at *9 (citing Shoulars, 671 F. Supp. 2d at 807) "Where there is conflicting evidence as to Claimant's education level, the ALJ must explain his findings."). Moreover, the ALJ erred by failing to consider the contradictory evidence presented by the Plaintiff's IQ testing results. Gordon, 725 F.2d at 236 (noting that an ALJ must "analyze[] all evidence and . . . sufficiently explain[ ] the weight he has given to obviously probative exhibits"). Accordingly, remand is appropriate for the ALJ to consider the contradictory evidence and provide an adequate explanation for his findings.

# **ORDER**

**IT IS, THEREFORE, ORDERED** that the Plaintiff's Motion for Summary Judgment [Doc. 12] is **GRANTED**, and that the Commissioner's Motion for Summary Judgment [Doc. 15] is **DENIED**. Pursuant to the power of this Court to enter judgment affirming, modifying or reversing the decision of the Commissioner under Sentence Four of 42 U.S.C. § 405(g), the decision of the Commissioner is **REVERSED** and the case is hereby **REMANDED** for further administrative proceedings consistent with this opinion. A judgment shall be entered simultaneously herewith.

    **IT IS SO ORDERED.**

Signed: November 11, 2019

Martin Reidinger
United States District Judge